FILED

AUG 2 4 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:23-CR-268-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **CRIMINAL INFORMATION** |
| ) | |
| MYASIA MYSHAY MIDGETTE ) | |

The United States Attorney charges:

## INTRODUCTION

At all relevant times:

1. Beginning no later than September 2021 and continuing through at least February 2022, in the Eastern District of North Carolina and elsewhere, the defendant, MYASIA MYSHAY MIDGETTE, and others known to the United States, conspired to carry out a housing fraud scheme to obtain emergency rental assistance designated for households impacted by the Covid-19 pandemic. The scheme included fraudulent applications submitted to the North Carolina agency tasked with administering federal Covid-19 relief funds to North Carolina residents whose housing was impacted by the pandemic. MIDGETTE fraudulently obtained rental assistance on three NC HOPE Program applications, resulting in a disbursement of approximately $37,800.00 in proceeds in connection with this scheme.

## The NC HOPE Program

2. On March 13, 2020, President Donald J. Trump declared the existence of a national emergency in response to the Covid-19 pandemic. On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act,

which was designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the Covid-19 pandemic.

3. The CARES Act authorized, among other things, $5 billion in funds, administered by the United States Department of Housing and Urban Development ("HUD"), as a source of flexible funding for states and localities to prevent, prepare for, and respond to the coronavirus pandemic. The CARES Act also authorized United States Department of Treasury (US Treasury), to establish a $150 billion Coronavirus Relief Fund (CRF), to assist states and localities cover expenses incurred due to the Covid-19 public health emergency.

4. In North Carolina, the Department of Public Safety used these two funding sources from the CARES Act to assist North Carolina renters stay in their homes during the Covid-19 pandemic. The emergency rental assistance program was run though the North Carolina Housing Opportunities for the Prevention of Evictions program, known as the "NC HOPE Program." It was funded with an initial $51.5 million HUD allocation and $66 million CRF allocation from the CARES Act.

5. On December 27, 2020, the Consolidated Appropriations Act of 2021 (CAA) became law, which included $900 billion in federal support for additional economic assistance and stimulus relief to address the ongoing Covid-19 pandemic. The CAA continued many of the programs authorized under the CARES Act, as well as added new allocations and new guidance to address the continued impact on American lives caused by the pandemic. Among other things, the CAA established

the Emergency Rental Assistance (ERA) program, which provided funding through the US Treasury for states to administer to households that were impacted by Covid-19 and unable to pay rent or utilities.

6. The State of North Carolina received a total of $1.261 billion in ERA funds from the CAA. Some of this funding went directly to North Carolina cities and counties to be disbursed locally. The majority of the funds went to the NC HOPE Program to assist financially struggling renters state-wide.

7. In total, the NC HOPE Program received $879 million from the federal government to assist North Carolina renters who faced housing insecurity due to Covid-19. The NC HOPE Program closed to applicants on December 17, 2021.

8. The NC HOPE Program assisted renters with paying up to 15 months of rent, including 12 months of arrears. It could also assist in paying utility expenses. In exchange for the NC HOPE Program funds, landlords agreed not to evict the tenant for a certain amount of time.

9. To be eligible for assistance through the NC HOPE Program, a tenant must have faced possible eviction or missed rent or utility payments anytime since April 1, 2020, and had lost income, employment, or faced financial hardship due to the Covid-19 pandemic. The tenant applicant must have occupied the rental property as their primary residence and be a named party to the lease or rental agreement. Additionally, the tenant applicant must earn an income less than or equal to eighty percent (80%) of the median income of the county of residence.

10. To obtain assistance, a tenant submitted an electronic application, stating their name, rental address, contact information, household members, household income, and contact information for the landlord or utility provider. The online application also required the tenant to confirm that they lived at the address, were behind on rent or unable to pay rent or utilities due to the Covid-19 pandemic, and the amount owed to the landlord and the utility provider. The NC HOPE Program requested, but did not require, the tenant to submit a form of identification. It also requested a copy of the tenant's lease, or a written statement from the landlord identifying the amount of rent owed. The tenant was required to certify the accuracy and truthfulness of the application.

11. If eligible to receive rental assistance, the NC HOPE Program sent a Landlord Tenant Agreement (LTA) to the email addresses provided for both the landlord and tenant. In signing the LTA, both parties were required to attest that the statements to the NC HOPE Program were true and correct to the best of their knowledge.

12. Once both parties signed the LTA, the NC HOPE Program required the landlord to submit an Internal Revenue Service Form W-9, with their name, address, filing status, and taxpayer identification number. By signing and submitting the W-9, the landlord certified under penalties of perjury the accuracy of the information.

13. Upon approval, a check issued by the North Carolina Department of Public Safety was sent through the mail directly to the landlord or utility company to pay the tenant applicant's rent or utility bills.

## THE CHARGE

14. The preceding paragraphs of this Criminal Information are incorporated herein by reference as factual allegations.

15. At all relevant times, the defendant, MYASIA MYSHAY MIDGETTE, resided in Craven County within the Eastern District of North Carolina.

16. Beginning in or about September 2021 and continuing through at least in or about February 2022, in the Eastern District of North Carolina and elsewhere, defendant MYASIA MYSHAY MIDGETTE and others known to the United States Attorney, did knowingly combine, conspire, confederate, and agree to commit and offense against the United States, specifically to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, and for purposes of executing or attempting to execute the scheme, used the mails and caused the mails to be used, in violation of Title 18, United States Code, Section 1341 ("Mail Fraud").

### PURPOSE OF THE CONSPIRACY

17. It was a purpose of the conspiracy for MIDGETTE to carry out a scheme to enrich herself and others by submitting false and fraudulent NC HOPE Program

applications to acquire, and attempt to acquire, emergency rental assistance, which was intended to assist financially struggling North Carolina renters stay in their homes and avoid eviction during the Covid-19 pandemic.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and co-conspirators sought to accomplish the purpose of the conspiracy, included, among others, the following:

18. MIDGETTE submitted and caused to be submitted three fraudulent applications for rental assistance to the NC HOPE Program, seeking a total of $37,800 in NC HOPE funds.

19. MIDGETTE falsely represented on each NC HOPE Program application that she was the landlord of three properties in Craven County, North Carolina.

20. At no time during the relevant period did MIDGETTE own, control, manage, or otherwise serve as a landlord for any property in North Carolina.

21. MIDGETTE solicited individuals and conspired with others to use their names and personal information as tenants in need of housing assistance on NC HOPE Program applications.

22. MIDGETTE fabricated a lease between herself as landlord and the alleged tenant renter to submit with each NC HOPE Program application.

23. For each NC HOPE Program application, MIDGETTE falsely certified that she was the landlord of the property on the HOPE Program LTA.

24. For each NC HOPE Program application, MIDGETTE submitted to the NC HOPE Program a fraudulent Internal Revenue Service Form W-9 as a final step in the rental assistance application process.

25. Based on the false and fraudulent representations made to the NC HOPE Program, a total of three checks, amounting to $37,800, were issued to MIDGETTE.

26. On or about November 22, 2021, MIDGETTE, for the purpose of executing the scheme, used the mails, and caused the mails to be used, in which a State of North Carolina Department of Public Safety check in the amount of $12,600 was sent through the mail to MIDGETTE at 2303 Pinetree Drive, New Bern, NC 28560.

27. On or about December 20, 2021, MIDGETTE, for the purpose of executing the scheme, used the mails, and caused the mails to be used, in which a State of North Carolina Department of Public Safety check in the amount of $12,600 was sent through the mail to MIDGETTE at 2303 Pinetree Drive, New Bern, NC 28560.

28. On or about February 1, 2022, MIDGETTE, for the purpose of executing the scheme, used the mails, and caused the mails to be used, in which a State of North Carolina Department of Public Safety check in the amount of $12,600 was sent through the mail to MIDGETTE at 2303 Pinetree Drive, New Bern, NC 28560.

29. MIDGETTE negotiated three NC HOPE Program rental assistance checks at check cashing facilities.

All in violation of Title 18, Unites States Code, Section 1349.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense charged herein against MYASIA MYSHAY MIDGETTE, in the amount of at least $37,800.00.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

8

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

                                        MICHAEL F. EASLEY, JR
                                      United States Attorney

BY:   _____
        KAREN K. HAUGHTON
        Assistant United States Attorney